Elizabeth Hopkins – CA State Bar No. 324431
   Email: ehopkins@kantorlaw.net
Susan Meter – CA State Bar No. 236133
   Email: smeter@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone:  (818) 886-2525
Facsimile:   (818) 350-6272

*Attorneys for Plaintiffs*
VICTOR YUSTMAN, VICTORIA FELLOWS, MARIA DEGLAUVE, RON OZAKI, BERNHARD J. ORNELLAS, and ERNEST HEWSON, individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR YUSTMAN, VICTORIA FELLOWS, MARIA DEGLAUVE, RON OZAKI, BERNHARD J. ORNELLAS, and ERNEST HEWSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED AIRLINES, INC., UNITED AIRLINES FRONTLINE VOLUNTARY SEPARATION LEAVE PROGRAM, UNITED AIRLINES CONSOLIDATED WELFARE BENEFIT PLAN, and UNITED AIRLINES RETIREE MEDICAL PROGRAM,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PRE-JUDGMENT AND POST-JUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiffs, Victor Yustman, Victoria Fellows, Maria Deglauve, Ron Ozaki, Bernhard J. Ornellas, and Ernest Hewson, individually and on behalf of all others similarly situated, herein set forth the allegations of their Complaint against Defendants United Airlines, Inc., United Airlines Frontline Voluntary Separation Leave Program, United Airlines Consolidated Welfare Benefit Plan, and United Airlines Retiree Medical Program.

## JURISDICTION

1. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e) and (f). This Court has supplemental subject matter jurisdiction of the state-law claim pursuant to 28 U.S.C. § 1367(a), because that claim forms part of the same case or controversy and exceeds the sum or value of $75,000.

## VENUE

2. Venue lies in the Central District of California pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because United Airlines, Inc. ("United") may be found in this judicial district and because the actions or inactions constituting the breaches occurred in this district.

## NATURE OF THE CASE

3. Plaintiffs Victor Yustman, Victoria Fellows, Maria Deglauve, Ron Ozaki, Bernhard J. Ornellas, and Ernest Hewson bring this suit against Defendants under ERISA, for benefits under United Airline's Frontline Voluntary Separation Leave Program ("VSL Program") offered to certain employees in January 2021, as well as for injunctive and other equitable relief to enforce rights under and remedy violations of ERISA.

**THE PARTIES**

4. Plaintiff Victor Yustman is a resident of Moreno Valley, County of Riverside, State of California. Mr. Yustman was an employee of United Airlines ("United"), who retired within 36 months prior to January 21, 2021.

5. Plaintiff Victoria Fellows is a resident of Carson City, County of Los Angeles, State of California. She was an employee of United who retired within 36 months prior to January 21, 2021.

6. Plaintiff Maria Deglauve is a resident of the City of Santa Clarita, County of Los Angeles, State of California. She was an employee of United who retired within 36 months prior to January 21, 2021.

7. Plaintiff Ron Ozaki is a resident of the City of Los Angeles, County of Los Angeles, State of California. He was an employee of United who retired within 36 months prior to January 21, 2021.

8. Plaintiff Bernhard J. Ornellas is a resident of Playa del Rey, County of Los Angeles, State of California. He was an employee of United who retired within 36 months prior to January 21, 2021.

9. Plaintiff Ernest Hewson is a resident of Los Angeles, County of Los Angeles, State of California. He was an employee of United who retired within 36 months prior to January 21, 2021.

10. Defendant United is an Illinois corporation headquartered in Chicago, Illinois, which operates throughout the United States. Upon information and belief, United is the plan sponsor and plan administrator of the VSL Program, the United Airlines Retiree Medical Program, and the United Airlines Consolidated Welfare Benefit Plan and in those capacities and others in an ERISA fiduciary.

11. Defendant VSL Program is an employee welfare benefit plan within the meaning of ERISA Section 3(1), 29 U.S.C. § 1002(1).

12. Defendant United Airlines Retiree Medical Program is an employee welfare benefit plan within the meaning of ERISA Section 3(a), 29 U.S.C. § 1002(a).

13. Defendant United Airlines Consolidated Welfare Benefit Plan is an employee welfare benefit plan within the meaning of ERISA Section 3(a), 29 U.S.C. § 1002(a), established effective January 1, 2012, to provide employees and retirees certain benefits including Health Care Expense reimbursement accounts and other post-retiree benefits.

## FACTS

### History of United's Early Out Programs

14. Many airline industry employees work very long careers and Plaintiffs were no exception. Throughout their careers, Plaintiffs and the Class were aware of "early out" program offerings made by United. These early out programs were typically offered when the airline industry was undergoing financial distress. The purpose of an early out is to induce long-term employees to end their employment earlier than they would otherwise have done in exchange for additional monetary compensation or benefits. This allows the airline to reduce its overhead by terminating the employment of, typically, higher paid employees.

15. For example, in 2008 United offered an early out program for Mechanic and Related Employees (IBT represented employees). The program was offered to employees who were at least 55 years old and had at least 15 years of service. It provided a lump-sum payment of $500 for each year of service up to 25 years of service with a $12,500 limit. It also included travel benefits, as well as life insurance and medical benefits (including a COBRA option).

16. Similarly, in 2014 United offered an early out program to flight attendants. To be eligible, the employee needed to have a Flight Attendance System Senior bid date of September 1999 or earlier. The program provided a lump-sum payment of $4,000 for each full year of service up to $100,000. It also

offered medical and travel pass benefits for retiree eligible employees, as well as COBRA for non-retiree eligible employees.

17. On August 17, 2017, Oscar Munoz, who was the CEO of United from 2015 to 2020, sent out an announcement to all United employees saying that "[d]uring my visits throughout the system, a frequent question that arises from our colleagues is: When can we expect to have another early out opportunity so that we can plan for retirement?" In response, Mr. Munoz said that he had looked into this question "with the seriousness and depth that the issue and our people deserve." He continued by saying that "an early out makes sense when a company is getting smaller," but at that time an early out did not make sense because the company was growing.

18. Nevertheless, Mr. Munoz recognized that some long-term employees were hesitant to retire, sometimes waiting for an early out program to decide to end their long careers. In order to remove this hesitancy and encourage retirement by such workers, Mr. Munoz made a promise to employees designed, in his words, to "give [them] greater confidence when [they] make the decision to retire." He promised that a new clause would be added to the United retirement policy stating that if an early out program was offered within 36 months after retirement, the retired employee would be allowed to participate in the program.

19. Mr. Munoz stated that this change in policy was because he "wanted to be upfront and transparent" with the employees about United's future plans so that employees could "make the best plans for [themselves] and [their] family."

20. In accordance with this promise, in August 2017 a policy was established for employees who retired within 36 months of an early out program offering would be offered the right to participate in the early out program.

21. In 2020, when the COVID-19 pandemic began to hit the United States and the globe, the airline industry was significantly impacted due to travel restrictions and the decreased demand for travel during early phases of the

pandemic. As a result, United, along with many other airlines, found itself in a downward financial trajectory.

22. In May 2020, in response to a reporter's questions, Kate Gebo, United's Executive Vice President of Human Resources and Labor Relations, said that United planned to cut more than 3,400 management jobs, which represented approximately 30% of United's management and administrative employees. Employees were to be notified in July, with an effective date of October 1, 2020.

23. Ms. Gebo also stated that United intended to announce a voluntary separation package for domestic management and administrative employees by mid-May 2020. This package allowed certain employees to keep their travel privileges and medical benefits for an extended period along with some continuation of pay.

24. Ms. Gebo also stated that starting October 1, 2020, white-collar employees who were laid off would not receive any cash severance packages. In the interview she stated that United is "trying to give everyone as much notice as possible that changes are coming, and we're making the voluntary option as attractive as possible."

25. By this time, United was already receiving financial assistance from the CARES Act (Coronavirus Aid, Relief, and Economic Security Act, March 27, 2020). By accepting the financial assistance from the CARES Act, United was prevented from reducing its employment levels more than 10% below its March 24, 2020 level until September 30, 2020.
https://home.treasury.gov/system/files/136/Procedures%20and%20Minimum%20Requirements%20for%20Loans.pdf

26. On October 30, 2020, United announced it would be ending its policy to allow retired employees to participate in early out programs offered within 36 months of retirement. The announcement said that this was due to uncertainty in

the airline industry, but also because policy was "limit[ing] [United's] available options."

27. United officially terminated its retiree early out participation policy effective January 1, 2021.

28. On January 21, 2021, United announced that it was offering the VSL Program. According to the VSL Program's terms that were distributed to employees who were members of the IAM (International Association of Machinists), employees who were at least 45 years old and had at least 15 years of service were eligible to participate. Such employees could choose to voluntarily separate from employment and choose between two programs.

29. On information and belief, the VSL Program was a company-wide program offered to employees other than the IAM group of employees who were at least 45 years old and had at least 15 years of service.

30. The VSL Program A offered payment of 33% of the employee's wages up to $20,000 through the end of 2021 (referred to as the "pre-separation period"), $125,000 contribution to a Retiree Health Account, continued medical coverage through December 31, 2021, and active travel privileges through December 31, 2026.

31. The VSL Program B offered payment of 100% of an eligible employee's base wages up to $112,500 through August 31, 2022, and active travel privileges through December 31, 2026.

32. At the end of the pre-separation period, employees who were considered eligible for "retiree" status as defined by United (determined by age and years of service) would be eligible for retiree medical and retiree pass travel under certain circumstances. If they were not retiree-eligible for medical, they were entitled to COBRA. If they were not eligible for retiree pass travel, they could be eligible for Retiree Lite Travel passes (depending on their age and years of service).

33. Employees who chose to participate in the VSL Program would be paid their wages on the regular payroll schedule; however, they did not report to work and at the end of the separation period were terminated from employment and were not eligible for rehire or recall by United either before or after the separation period.

34. The application window for the VSL Program was January 21, 2021, at 11:59 p.m. CT on February 25, 2021. However, only employees and not retirees were informed by United about the VSL Program and how to apply for benefits under the program.

35. In a question and answer about the VSL Program, United answered the question: "How does this program relate to the Early Out lookback that Oscar announced in 2017?" In response, United wrote: "This program is not an early out, which is a financial incentive program that provides cash upon separation. This Program provides paid leave or medical and pass travel enhancements. These types of benefits are excluded from the 2017 policy, which was updated in 2020."

36. In fact, however, the VSL Program provides the same kinds of benefits as prior early out programs: a sum of money, medical benefits and travel benefits and, therefore, falls squarely within the early out policy established by United Airlines in 2017, despite United's attempt to avoid the policy obligation to retirees by renaming it.

### Plaintiffs' Airline Careers

37. Plaintiffs began their careers in the 1970s and 1980s, working for Continental Airlines at Los Angeles International Airport ("LAX"). In 2010, when United purchased Continental Airlines ("Continental acquisition"), Plaintiffs became employees of United.

38. Between 2010 and 2012 the two companies continued to operate separately until they could fully integrate their operations, which was completed in or around March 2012.

39. Mr. Yustman began his employment with Continental Airlines at LAX on April 5, 1975. He worked in ramp services, which continued after he became an employee of United. Mr. Yustman retired from United on February 12, 2019. He retired secure in the knowledge that, if an early out incentive program was offered in the following 36 months, he would be informed of this and be able to participate. However, United did not inform him or other retirees about the VSL Program. Instead, through others he knew who were still employed with United, Mr. Yustman became aware of the program on approximately February 24, 2021, the day before the application window for the VSL Program closed. He immediately contacted Arno Hohn, the IAM union representative for LAX employees. Mr. Yustman asked how he could apply for the early out program. Mr. Hohn explained the two options that were available under the VSL Program, but stated that he was not sure whether Mr. Yustman was eligible to participate. Mr. Yustman reminded Mr. Hohn about the August 2017 announcement from Mr. Munoz. Mr. Hohn said that he did not recall the retirement policy, but informed Mr. Yustman that he would look into it and get back to Mr. Yustman later in the day.

40. When Mr. Hohn called Mr. Yustman back, he informed Mr. Yustman that the VSL Program was not an early out program. When Mr. Yustman questioned Mr. Hohn about this, Mr. Hohn told Mr. Yustman to forget about the VSL Program and not to waste his time with a lawyer because no lawyer could compete with United's top lawyers.

41. Not satisfied with this response, Mr. Yustman contacted several people within United, including the United Director of Retirement, the human resources

office, the employee services office and a retirement specialist. No one was willing to help him.

42. In fact, all of the United personnel with whom Mr. Yustman spoke said they did not recall the announcement from Mr. Munoz about the 2017 early out policy for anyone who retired within 36 months of an early out offering, despite the very recent cancellation of the policy only a month earlier, as well as a Q&A that was provided to the VSL participants specifically about the 2017 retiree early out policy.

43. Ms. Fellows began her employment with Continental Airlines at LAX on July 16, 1989. She worked in ramp services, which continued after she became an employee of United. In March of 2019, Ms. Fellows injured her knee opening an aircraft door and went on workers' compensation. She eventually had a total knee replacement. Due to the surgery and subsequent complications from the surgery, she remained off work for many months. In October 2020, her doctor released her to return to work but with restrictions and limitations. Because of her restrictions, United told her they did not have a position to which she could return and told her she either needed to resign or retire. Around December 8th or 9th of 2020, Ms. Fellows talked to a human resources representative from United and was told she needed to give a date of resignation or retirement. Having worked for over 30 years and being 67 years old, Ms. Fellows decided to retire. Her official retirement date was set for December 10, 2020. Ms. Fellows was not informed by United that an early out package was going to be announced on January 21, 2021, nor did she receive any communication directly about the package when it was announced on January 21, 2021. Ms. Fellows certainly would have postponed her retirement date if she had been given the opportunity and informed that by doing so, she would qualify for additional valuable benefits. She learned there was a package because she was still friends with many United employees. She tried to contact United to find out more about

1 the early out and whether she qualified, but no one would answer or return her calls.

44. Ms. Deglauve began her employment with Continental Airlines at LAX on April 7, 1986. In January 2020, at the age of 65 and just shy of 34 years of service, she decided to retire. Ms. Deglauve never received any direct communication from United about the early out program announced on January 21, 2021.

45. Mr. Ozaki began his employment with Continental Airlines at LAX on December 13, 1978. In 2019, although hoping for early out offering, Mr. Ozaki decided it was time to retire. He retired effective June 2, 2019. Ms. Ozaki never received any direct communication from United about the early out program announced on January 21, 2021.

46. Mr. Ornellas began his employment with Continental Airlines at LAX on December 28, 1977, at the age of 19. After COVID-19 began to affect United employees, Mr. Ornellas decided to use his many hours of unused sick time and stay home. At that point, he had accumulated approximately 1,500 hours of sick time and he took seven months off work and returned in October 2020. He was planning on working through the end of December 2021, but after being back for a couple of months during a peak of COVID-19 cases, he decided he was ready to retire after 43 years of employment. Around December 10, 2020, Mr. Ornellas called United and spoke to Teri Gallardo, the LAX Human Resources Operations Supervisor to inform her of his intent to retire. Ms. Gallardo told Mr. Ornellas that he would receive more from the Continental Airlines Retirement Plan if he retired in December than he would if he retired in January because the interest rates used to adjust the lump sum would be changing effective January 2021. Based on this conversation, Mr. Ornellas decided he would retire in December 2020.

47. United set Mr. Ornellas' official retirement date as effective December 28, 2020, although he, in fact, continued to work with United's human resources

for the first two weeks of January 2021 to finalize the required paperwork. Indeed, from December 10, 2020, through early January 2021, Mr. Ornellas had approximately 15 calls with human resources personnel in order to complete required forms and to have his questions answered. On or about January 7, 2021, Mr. Ornellas received an official letter confirming his termination from active employment. The letter was dated January 4, 2021. Nowhere in this letter and at no time during any of his conversations between December 10, 2020 and January 7, 2021, did United inform him of the imminent early out program that United was about to offer to employees, and he never directly received any communication from United about the program. Mr. Ornellas was shocked and outraged when he learned from Mr. Yustman about the early out that was being offered to others so close after his date of retirement. He certainly would have waited a few weeks to retire in order to qualify for these valuable benefits if he had been informed that this was necessary. He contacted human resources and was told there was nothing they could do because he was retired and no longer an active employee.

48. Mr. Hewson was employed by Continental Airlines at LAX starting in November 1988. After more than 30 years of service, he decided to retire effective April 1, 2019, at the age of 66. He never received any direct communication from United about the early out program announced on January 21, 2021.

49. By failing to provide Plaintiffs and the Class members with the notices about the VSL Program and access to apply for the benefits thereunder, United prevented Plaintiffs and the Class members from applying for the VSL Program. In fact, the application process was only available through an online platform for employees, to which Plaintiffs and Class members, as retirees, no longer could access.

50. Nevertheless, Mr. Yustman made a written claim for benefits through a letter dated September 15, 2021, from counsel for Mr. Yustman to the administrator of the VSL Program. No response was received.

**Application of ERISA to the VSL**

51. ERISA governs employee benefits plan that are established or maintained by any employer engaged in commerce and includes both employee welfare benefit plans and employee pension benefit plans. 29 U.S.C. §§ 1002 and 1003(a).

52. 29 U.S.C. § 1002(3) provides that an employee welfare benefit plan is "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer to provide, in part, medical, disability, or unemployment benefits.

53. 29 C.F.R. § 2510.3–1(a)(3) provides that "include[d] within the definition of 'welfare plan' [are] those plans which provide holiday and severance benefits, and benefits which are similar (for example, benefits which are in substance severance benefits, although not so characterized)."

54. The VSL Program is an employee benefit plan that was established and is maintained by United that provides salary continuation and ancillary benefits that constitute or are similar to severance benefits. It is, therefore, a welfare plan or program governed by ERISA.

**CLASS ACTION ALLEGATIONS**

1. **Class Definition**. Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1) and (b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated (the "Class"):

> All employees of United who retired from United within 36 months prior to January 21, 2021, and who were at least 45 years old with at least 15 years of service at the time of retirement.

2. **Numerosity**. Upon information and belief, the Class is so numerous that joinder of all persons in the class is impracticable. Numerosity of the class will be ascertained and confirmed by discovery. The number and identity of the class members are determinable from the Defendants' records.

3. **Commonality**. There are questions of law or fact common to all members of the Class that concern Defendants' actions, including without limitation:

   a. Whether the VSL Program is an early out program to which the retiree early out policy applies;
   b. Whether Defendants acted arbitrarily and capriciously in determining that Plaintiffs and the Class of retirees were not eligible to participate in the VSL Program;
   c. Whether Defendants owed a fiduciary duty to Plaintiffs and the Class with regard to the VSL Program;
   d. Whether Defendants prevented employees who retired within 36 months prior to January 21, 2021, from being eligible to participate in and applying for benefits under the VSL Program;
   e. Whether Defendants breached their fiduciary duties by preventing Plaintiffs and the Class from participating in the VSL Program.

Resolution of these questions will not require individual inquiry into the actions or circumstances of individual employees. These common questions of law or fact center upon whether Plaintiffs are entitled to benefits under the VSL Program and whether Defendants violated their duties under ERISA by, among other things, promising Plaintiffs that they could participate in any early retirement programs offered within 36 months of their retirements but then reneging on this promise by offering such a program within the 36-month period and determining Plaintiffs could not participate in it.

4. **Typicality**. Plaintiffs are members of the Class as defined above. They have all been similarly harmed by the Defendants' actions in violating ERISA. They assert the same claims and legal theories under the same provisions of ERISA, and Regulations promulgated thereunder, that all Class members might assert.

5. **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the absent members of the Class. Because their claims are typical of those of absent members of the Class, Plaintiffs have every incentive to vigorously pursue those claims on behalf of absent Class members. Their interests coincide with, and are not antagonistic to, those of the Class. Moreover, Plaintiffs are represented by counsel experienced in ERISA and complex class action litigation.

6. **Rule 23(b)(1) Requirements**. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants, and a risk of adjudications which as a practical matter would be dispositive of the interests of other members of the Class who are not parties.

55. **Rule 23(b)(2) Requirements**. Defendants have acted and/or refused to act and are likely to act and/or refuse to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and other relief with respect to the Class as a whole.

## FIRST CLAIM FOR RELIEF
## (Against All Defendants)
## Claim for Benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

56. Plaintiffs incorporate the above paragraphs as though fully set forth herein.

57. ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), empowers a plan participant to bring suit to recover benefits due him under the terms of the

plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

58. The VSL Program is an ERISA plan.

59. The VSL Program is an early out program as it meets all of the criteria and is substantially similar to all other prior early out programs offered by United Airlines.

60. Plaintiffs and the Class all retired within 36 months of the offering of the VSL Program and are therefore eligible to participate in the VSL Program and the ancillary benefits thereto offered through United Airlines Consolidated Welfare Benefit Plan and Retiree Medical Program.

61. Plaintiffs and the Class were not provided any communication about the VSL Program or the ability to apply within the application window. Mr. Yustman was specifically discouraged and prevented from applying for the VSL Program.

62. Despite United's attempt to prevent Mr. Yustman from applying for the VSL Program, Mr. Yustman, through his counsel, filed a claim for benefits on October 5, 2021. As of the date of the filing of this Complaint none of the Defendants have responded to the claim. Therefore, the Plaintiffs and the Class are deemed to have exhausted any administrative procedure applicable to the VSL Program. In addition, Plaintiffs and the Class are deemed to have exhausted any administrative procedures applicable to the VSL because they were not provided any information on how to apply, how to file a claim or any appeal rights they would have under ERISA and were not given access to the online platform through which employees were instructed to apply.

63. Such application would also have been futile given that Defendants designed the VSL Program in an attempt to evade the earlier promises made to recent retirees.

64. Therefore, Plaintiffs have fulfilled all obligations required of them to file this complaint in court.

65. Plaintiffs and the Class seek a declaration that they are retired employees who were eligible to participate in the VSL Program offered to employees on January 21, 2021 and entitled to benefits under the VSL Program.

66. Plaintiffs and the Class also seek benefits due them under the VSL Program.

## SECOND CLAIM FOR RELIEF
## (Against Defendant United)
### Claim for Violation of ERISA Section 404(a), 29 U.S.C. § 1104(a),

67. Plaintiffs incorporate paragraphs 1 through 55 as though fully set forth herein.

68. United is the Employer under 29 U.S.C. § 1002(5) and the Plan sponsor pursuant to 29 U.S.C. § 1002(16).

69. On information and belief, United has the power to administer early out programs, including the VSL Program, including by appointing the other fiduciaries. As such, United is a fiduciary within the meaning of 29 U.S.C. § 1002(21).

70. ERISA Section 404(a), 29 U.S.C. § 1104(a), requires, among other things, that a fiduciary discharge its duties with respect to a plan solely in the interest of the plan participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries and under a prudent person standard of care.

71. United breached its fiduciary duties by reneging on its promise to employees who retired in the 36 months preceding January 21, 2021, through a scheme to prevent these retirees from participating in the VSL Program by, among other things, failing to inform them about the VSL Program, and failing to give them an opportunity to apply for benefits under the VSL Program. United further

breached its fiduciary duties by actively misinforming employees in a Q&A that the VSL was not an early out program when, in actuality, the VSL Program was not different in any material way from prior early out programs offered by United.

72.     Plaintiffs and the Class have been harmed by Defendant United's breach of fiduciary duties.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray this Court enter judgment as follows:

As to Count I

A.  Certify the Class under Federal Rule of Civil Procedure 23, appoint Plaintiffs as Class Representatives and appoint their attorneys as Class Counsel to represent the members of the Class.

B.  Declare and clarify that Plaintiffs and members of the Class are entitled to participate in the January 21, 2021, VSL Program.

C.  Order that benefits be awarded to Plaintiffs and Class members.

D.  Award Plaintiffs attorneys' fees and costs pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g).

E.  Award such other and further relief as the Court deems equitable and just.

As to Count II

A.  Certify the Class under Federal Rule of Civil Procedure 23, appoint Plaintiffs as Class Representatives and appoint their attorneys as Class Counsel to represent the members of the Class.

B.  Declare that Defendant United has breached its fiduciary duties to Plaintiffs and the Class members.

C.  Surcharge Defendants in the amount necessary to place Plaintiffs and the Class in the position they would have been in but for the Defendants' fiduciary breaches.

D. Equitably estop Defendants from denying that Plaintiffs and the Class are entitled to benefits under the VSL program.

E. Award Plaintiffs attorneys' fees and costs pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g).

F. Award such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Dated: December 6, 2021       KANTOR & KANTOR, LLP

By: */s/ Elizabeth Hopkins*
Elizabeth Hopkins
Susan L. Meter
Attorneys for Plaintiffs
VICTOR YUSTMAN, VICTORIA FELLOWS, MARIA DEGLAUVE, RON OZAKI, BERNHARD J. ORNELLAS, and ERNEST HEWSON, individually and on behalf of all others similarly situated